UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| AUTO CLUB FAMILY INSURANCE COMPANY | CIVIL ACTION |
| VERSUS | NO: 05-6482 C/W 06-1297 |
| HENRY S. PROVOSTY | SECTION: "S" (4) |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Henry S. Provosty's "Motion to Disqualify Ungarino & Eckert L.L.C." is **DENIED**.  (Document #28.)

**IT IS FURTHER ORDERED** that Henry S. Provosty's "Motion to Compel Depositions" is **DENIED**.  (Document #27.)

### I. BACKGROUND

Auto Club Family Insurance Company (AAA) issued a policy of homeowners insurance to Henry S. Provosty for the residence located at 261 West Robert E. Lee Boulevard in New Orleans, Louisiana.  The policy provides coverage in the amount of $237,930 for dwelling and other structures and $162,225 for personal property.  Following Hurricane Katrina and the breach of the 17th Street Canal, Provosty made a claim for homeowner's insurance coverage

under the "Premium Plus" policy. Provosty argues that, before the breach of the 17th Street Canal flood wall, his home sustained violent winds, flying debris, and wind driven rain for 16 to 20 hours. He contends that the high velocity wind force was the efficient proximate cause of the damage to the first and second floors of the residence and the contents. Provosty argues that the flood waters from the breach of the flood wall entered the residence after the damage was sustained by the wind, wind driven rain, and seepage from damaged plumbing.

The first adjuster sent by AAA was Dennis Adams, who evaluated only the structural damage to the second floor of the residence, excluding contents or personal property damage. Adams issued a report on November 6, 2005 that the damage to the residence from wind, collapse, and wind driven rain was $35,000.

Provosty retained an adjuster, James Pickens, to evaluate the damage and estimate the cost of repairs. The adjuster estimated the cost at $208,254.82, excluding damages caused by flood waters.[1] Provosty made a formal demand, which included damage to the contents and personal property, of $343,641.72.

On November 14, 2005, Provosty requested that a second AAA adjuster re-evaluate the damage to the structure and contents. Sam Lee, an AAA adjuster, informed Provosty that AAA would not consider any damage below the water line.

AAA appointed a third adjuster, Steve Bruening, who retained Bordelon to communicate and negotiate with Provosty in the settlement of his claim. Provosty contends that Breuning and

---

[1] Provosty states that AAA paid $85,000 of the total $208,000 adjuster estimate of structural damages.

Bordelon told Provosty that AAA would send an adjuster to his home to re-evaluate the structural damage and estimate the damage to the contents.  Provosty alleges that Breuning and Bordelon told him that AAA intended to pay additional damages to resolve the matter.  A fourth AAA adjuster, Craig Morice, evaluated the residence and increased the structural damage estimate by $50,000.  He did not evaluate any damage below the waterline or to the contents.

On January 3, 2006, Provosty demanded by certified letter that AAA abide by the "dispute resolution" terms and provisions in the policy, whereby the assured and the adjusters would select an adjuster to provide an evaluation to resolve the dispute.  AAA did not respond.  Provosty alleges that AAA instructed Bordelon and Ungarino to continue negotiating, while secretly preparing and filing a declaratory judgment action on December 13, 2005.  Provosty contends that these actions by AAA's adjuster and the attorney constitute bad faith failure to adjust and pay claims reasonably and timely and bad faith settlement negotiations.

On February 9, 2005 Bordelon "e-mailed" a formal statement denying coverage for all contents damage and additional structural damage.  AAA would not pay for any contents losses until Provosty filed a claim for contents loss, as a result of looting or theft, and completed a police report and a sworn statement.

Provosty filed a petition for declaratory judgment and for damages in Civil District Court for the Parish of Orleans (No. 06-1297), seeking coverage under the homeowner's policy for damages from wind, collapse, wind driven rain, and debris.  AAA removed the action to federal court based on diversity jurisdiction and filed a complaint for declaratory judgment (No. 05-6482) to resolve the question whether damage to the residence as a result of Hurricane Katrina is

covered under the homeowners policy.[2]  The court denied Provosty's motion to remand the case to state court and a "Motion to Abstain and Dismiss Complaint for Declaratory Judgment."

Provosty moves to disqualify Bordelon, Ungarino and the law firm of Ungarino & Eckert L.L.C. from representing AAA and to compel the deposition of David Bordelon and Matthew Ungarino (counsel).

## II. DISCUSSION

### A.  Motion to disqualify counsel

Provosty contends that Bordelon, Ungarino and their law firm should be disqualified from representing AAA because Bordelon and Ungarino communicated directly with him in their capacities as adjuster and negotiator on behalf of AAA and communicated information that contradicted that of other AAA adjusters.  Provosty argues that Bordelon and Ungarino are "necessary fact witnesses" because they contradict any testimony of AAA adjusters.

"[D]isqualification cases are governed by state and national ethical standards adopted by the court."  Federal Deposit Ins. Corp. v. United States Fire Ins. Co., 50 F.3d 1304, 1311-12 (5th Cir. 1995).  The relevant Local Rules, Model Rules of Professional Conduct, and state rules for the Eastern District of Louisiana are identical.  See Rules of Disciplinary Enforcement of the United States District Court for the Eastern District of Louisiana, Local Civil Rule 83.2 10E.[3]

---

[2]  Provosty challenges AAA's assertion that the case arises under the National Flood Insurance Program.

[3]  Rule 3.7 of the Rules of Professional Conduct states:
(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
   (1) the testimony relates to an uncontested issue;

Although the local and national ethical canons provide a useful guide for disqualification of counsel, they are not controlling. Federal Deposit Ins. Corp. v. United States Fire Ins. Co., 50 F.3d at 1314. "All of the facts particular to a case must be considered, in the context of the relevant ethical criteria and with meticulous deference to the litigant's rights." Id. The disqualification of a lawyer's firm is not mandated unless an impermissible conflict of interest exists between a testifying lawyer and the client. Id. at 1313.

---

    (2) the testimony relates to the nature and value of legal services rendered in the case; or
    (3) disqualification of the lawyer would work substantial hardship on the client.
(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

Model Rule 1.7, the general rule for attorney conflicts of interest, provides:
A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's own responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
    (1) the lawyer reasonably believes the representation will not be adversely affected; and
    (2) the client consents after consultation.

Disciplinary Rule 5-102 of the Model Code of Professional Responsibility provides:
    (B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

DR 5-101(A) provides:
    [E]xcept with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of the client will be or reasonably may be affected by his own financial, business, property, or personal interests.

5

Provosty has not demonstrated that there is any conflict. Counsel acted at all times as agents of AAA and simply conveyed Provosty's claims and assertions to AAA through Bruening. Mere discussions of settlement do not constitute a conflict. The motion to disqualify Bordelon, Ungarino and the law firm of Ungarino & Eckert L.L.C. is denied.

**B. Motion to compel depositions**

Provosty moves to compel the depositions of Bordelon and Ungarino on grounds that they are fact witnesses in this case and that their testimony is crucial to the bad faith claim. Provosty contends that counsel communicated directly with him regarding the handling and settlement of his claim for coverage under the homeowner's insurance policy and made representations that contradicted other AAA adjusters.

"[F]ederal courts have disfavored the practice of taking the deposition of a party's attorney; instead, the practice should be employed only in limited circumstances." Theriot v. Parish of Jefferson, 185 F.3d 477, 491 (5th Cir. 1999). "Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation." Shelton v. Am. Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986). There must be a showing by the party seeking to depose counsel that "(1) no other means exist to obtain the information than to depose opposing counsel, (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." Id. at 1327.

Provosty has not shown that the limited circumstances are present in this case. Counsel represents AAA, and there is no indication that the decisions concerning Provosty's claim were

not directed by AAA. Provosty has not demonstrated that the attorneys would give evidence independent of the testimony of the AAA adjuster or that found in the existing AAA file. Accordingly, the motion to compel the depositions is denied.

New Orleans, Louisiana, this  9th  day of August, 2006.

_____
**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**